# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                      No. CR 07-2051 JB

WILLIAM GARCIA-CORNEJO
and CHRISTINA ANNA PALLANES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant William Garcia-Cornejo's Motion to Dismiss Indictment, filed October 16, 2007 (Doc. 18); and (ii) Defendant Christina Anna Pallanes' Notice of Joinder in Motion to Dismiss Indictment, filed October 31, 2007 (Doc. 22). The Court held a hearing on the motion on November 21, 2007. The primary issue is whether the Court should dismiss the Indictment against the Defendants with prejudice because the United States secured the Indictment forty-three days -- rather than thirty days -- after the Defendants' arrest. Because the Indictment was late, but the United States did not act egregiously, the Court will grant the motion to dismiss in part and deny the motion in part, and dismiss the Indictment without prejudice.

## PROCEDURAL BACKGROUND

The Complaint charged each Defendant with violating 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. 2. See Complaint at 1, filed August 29, 2007 (Doc. 1)("Complaint"). The Defendants are charged with possessing with intent to distribute Fentanyl, a synthetic heroin. See Response to Defendant's Motion to Dismiss the Indictment with Prejudice at 4, filed November 1, 2007 (Doc.

23)("United States' Response"). The amount in question is 1.75 grams.[1] See id.  The Defendants'

sentencing guideline imprisonment range, assuming a criminal history category of I or II, is 151 to

210 months.  See id.; Transcript of Hearing (taken Nov. 21, 2007)("Tr.") at 4:10-12

(Dunleavy)(conceding that the base offense level for the Defendants' crime is accurately represented

in the United States' pleading).[2]

Attached to the Complaint filed on August 29, 2007 was a sworn affidavit given by Special

Agent Jarrell W. Perry.  See Complaint, Affidavit of Jarrell Perry, executed August 29, 2007 ("Perry

Aff.").  The affidavit states that, on August 28, 2007, Special Agent Jarrell W. Perry and John E.

Clayborn were at the Amtrack Train Station in Albuquerque, New Mexico.  See id. at 1.  Perry

approached Pallanes, identified himself as a police officer, and asked for and received permission

to speak with her.  See id.

Pallanes told the officer that she was traveling with her fiancé, Garcia-Cornejo, who was

currently outside the Amtrack Train.  See id.  When asked if they had any luggage with them,

Pallanes originally identified, as belonging to both her and her fiancé, a maroon, soft-sided suitcase

that was in the overhead luggage compartment and a green duffle bag lying on the floor.  See id.

Pallanes then stated that the maroon bag belonged to her and the green bag belonged to her fiancé.

See id.

---

[1]The United States' Response indicates that the amount of Fentanyl in question 1.75 grams. See United States' Response at 4.  The Complaint indicates that the amount in question is 1750 gross grams.  See Complaint at 1.  The affidavit of Special Agent Jarrell Perry indicates that the amount in question is 1.75 gross grams. See Complaint, Affidavit of Jarrell Perry at 2, executed August 29, 2007. The Court has not been given any indication whether there is a discrepancy between the various measurements given in these documents.

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Perry asked for and received permission from Pallanes for voluntary consent to search her maroon bag for illegal contraband. See id. The consensual search of the maroon bag did not produce illegal contraband. See id. Perry then walked off the train and approached Garcia-Cornejo who was standing on the platform area. See id.

Perry identified himself as a police officer, and asked for and received permission to speak with Garcia-Cornejo. See id. Perry asked Garcia-Cornejo for identification, at which time Garcia-Cornejo went inside the train where Pallanes was seated to retrieve his identification. See id. After reviewing Garcia-Cornejo's identification, Perry asked Garcia-Cornejo if he had any luggage with him. See id. at 2.

Garcia-Cornejo identified the same maroon bag that Pallanes had previously identified. See id. at 2. Perry asked Garcia-Cornejo if he had any other luggage, and Garcia-Cornejo stated no. See id. at 2. Perry then asked Garcia-Cornejo if the green duffle bag identified previously by Pallanes was his, and Garcia-Cornejo said yes. See id. at 2.

Perry asked Garcia-Cornejo for voluntary consent to search his green bag, and Garcia-Cornejo said yes. See id. at 2. After removing several items of clothing from the bag, Perry observed two clear plastic zip-lock bags containing a white powdery substance. See id. at 2. Perry knew from his training and experience that the bundles were consistent with illegal narcotics. See id. at 2.

Garcia-Cornejo and Pallanes were handcuffed and placed under arrest. See id. at 2. Garcia-Cornejo and Pallanes were transported to DEA Albuquerque District Office. See id. at 2. At the office, a thorough search of the green bag was done, which revealed a total of two clear plastic zip-lock bags containing a white-colored powdery substance. See id. at 2. The two bundles of powder weighed approximately 1.75 gross kilograms. See id. at 2. Both of the bags containing the powdery

substance were transported to the Metropolitan Science Center, where they were tested and found to be Fentanyl, a schedule 2 controlled substance.  See id. at 2.

After Miranda warnings had been given, Garcia-Cornejo said that he believed that the green bag, which belonged to him, contained synthetic heroin, and that he and Pallanes were going to be paid $7,000.00 to deliver it in Chicago.  See id. at 3.   Garcia-Cornejo stated that Pallanes had traveled to Chicago a couple of months ago to meet with people concerning the delivery of the drugs and that Pallanes knew about the delivery of the synthetic heroin.   See id. at 3.

After Miranda warnings had been given to Pallanes, she said that Garcia-Cornejo did not have anything to do with the delivery of what she believed to be cocaine.   See id. at 3.  She indicated that she picked up what she thought was cocaine in Tucson, Arizona and was to deliver it to Chicago, where she expected to be paid $7,000.00.  See id. at 3.  She said that she had traveled to Chicago a few months ago to meet with people regarding the transportation of what she thought was cocaine.  See id. at 3.

The Defendants were arrested on August 28, 2007.  See United States' Response at 1.  The Defendants appeared in Court before the Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, for an initial appearance on August 29, 2007, and again for detention and preliminary hearings with counsel on August 30, 2007.  See id. Neither Garcia-Cornejo nor Pallanes waived presentment to the grand jury.  See id.  At the conclusion of those hearings, Chief Judge Garcia ordered that Garcia-Cornejo and Pallanes be detained.  See id.

Thirty days from the Defendants' arrest was September 27, 2007.  See id.  On October 10, 2007, a grand jury returned an Indictment against the Defendants.  See id. The Indictment charges the Defendants with two counts related to drug trafficking.  See Motion to Dismiss Indictment at 1, filed October 16, 2007 (Doc. 18)("Motion to Dismiss").

-4-

Neither Garcia-Cornejo nor Pallanes has done anything to thwart the United States in obtaining an indictment against them.  See United States' Response at 1. The United States represents that the delay in securing the Indictment was the result of inadvertence.  See id. at 4.  The United States indicates that the prosecutor previously assigned to the case is also handling a case in the District of Arizona, which requires travel to and from that state.  See id.  The United States admits that the deadline to present the Defendants to the grand jury was miscalendared.  See Tr. at 21:8-15 (Cairns).

On October 16, 2007, Garcia-Cornejo filed a motion to dismiss the Indictment with prejudice. See Motion to Dismiss. Pallanes joins and incorporates by reference Garcia-Cornejo's motion to dismiss the indictment.  See Notice of Joinder in Motion to Dismiss Indictment at 1, filed October 31, 2007 (Doc. 22)("Joinder Motion").  Pallanes requested a hearing on the motion.  See id.

Assistant United States Attorney Norman Cairns opposes the Defendants' request.  See United States' Response.  The United States expresses its regrets in the delay in obtaining the Indictment against the Defendants.  See id. at 4; Tr. at 24:7-12, 34:22-25 (Cairns).

The Court held a hearing on this matter on November 21, 2007.  At the hearing, the counsel for both Garcia-Cornejo and Pallanes argued that the Court should dismiss the indictment with prejudice.  Garcia-Cornejo's counsel, Susan Dunleavy, argued that the Court needs to look at three factors to determine whether it should dismiss the indictment with or without prejudice: (i) seriousness of the offense; (ii) facts and circumstances that led to this situation; and (iii) impact on the process of administration of the Speedy Trial Act and on justice.  See Tr. at 2:24-3:3 (Dunleavy). Garcia-Cornejo's counsel also pointed out that the Defendants had done nothing to create the delayed indictment situation.  See  id. at 3:4-6 (Dunleavy).

Ms. Dunleavy asked the Court, when considering the seriousness of the offense, to take into consideration that the Defendants did not know exactly what drug they were transporting and did not understand the seriousness of the offense that they were committing. See id. 4:13-21 (Dunleavy). In response to the Court's question whether she had any case law supporting that the Court should consider the actual seriousness of the particular offense as opposed to just looking at the seriousness of the crime as indicated by the United States Sentencing Guidelines, Ms. Dunleavy said she had no case law authority to assist the Court on that issue.  See id. at 4:23-5:7 (Dunleavy & Court).

Ms. Dunleavy represented to the Court that, while the problem was not chronic, this was not the first time, of which she was aware, that the United States had violated the Speedy Trial Act.  See id. 5:8-13 (Dunleavy).  Ms. Dunleavy conceded that, in those cases, the court did not dismiss the indictments with prejudice but rather without prejudice.  See id. 5:24-6:2 (Dunleavy).  The Court questioned Ms. Dunleavy whether the delay of the indictment caused any additional loss of liberty for Garcia-Cornejo.  See id. 6:9-14 (Court).  She indicated to the Court that Garcia-Cornejo believed that he was caused an additional loss of liberty, but that from a legal perspective, it was more of a speedy trial issue and that the loss of liberty would not have largely changed had the sequence of events been different.  See id. at 7:6-12 (Dunleavy).

Ms. Kirtan Khalsa, counsel for Pallanes, argued that, when considering the seriousness of the offense, the circumstances regarding Pallanes are different from those surrounding Garcia-Cornejo, and thus the seriousness of her offense is questionable.  See id. at 7:21-8:2 (Khalsa).  While Ms. Khalsa conceded that the charges against both Defendants are the same, she pointed out that the bag in which the drugs were found did not belong to Pallanes and that Pallanes told the officers that it was not her bag.  See id. at  8:13-23 (Khalsa).  Ms. Khalsa conceded that she did not have a particular case that supported her request for the Court to look to the specific circumstances of the

case when considering the seriousness of the crime.  See id. at 9:25-10:2 (Khalsa).

Ms. Khalsa compared the seriousness-of-the-offense factor to the standards applied in a detention hearing.  See id. 9:25-10:2 (Khalsa). The Court indicated that it was not certain that such a parallel could be drawn between a detention hearing and the present case.

> I'm wondering if this can really be [likened] to a detention hearing because the ultimate issue there is danger to the community.  That doesn't seem to be a factor here. . . . It seems to me that it's less of a question of whether the person is a danger to the community and more a question of just how serious the offense [is] that's charged. . . . I'm wondering if the cases are more of the nature . . . [of] a reentry case with time served, maybe that's the time to think more seriously about dismissal; whereas if it's the other end of the totem pole, something like murder, it's going to take a lot more to get it dismissed.

Id. at 10:3-14 (Court).  Ms. Khalsa responded, arguing:

> Your Honor, I would think -- and I'm not  trying to liken it to the standard of dangerousness to the community, but one of the factors that the Court considers with detention is seriousness of the off[ense], and I think that as with that it's appropriate for the Court to look at the particular circumstances of the offense, because arguably every crime, every federal crime is a serious crime.  There's different levels of seriousness with regard to particular drug offenses.  Quantity of the drugs, which I think goes to the particular circumstances of the offense, and I think another thin[g] is the strength of the evidence.  And I think . . . that would go to the seriousness of the offense with regard to miss Pallanes . . .

Id. at 10:15-11:2 (Khalsa).

Ms. Khalsa also brought to the Court's attention that this incident was not the only one of which she was aware in which the government missed the indictment deadline.  See id. at 11:17-18 (Khalsa).  She stated that she personally had a case in which she waived the thirty-day time period and extended the deadline to  ninety days, and the United States still failed to indict within the ninety-day time period.  See id.  She also indicated that the Assistant United States Attorney, Norman Cairns, was aware that the United States would miss the thirty-day deadline before the deadline passed and failed to do anything to prevent the violation.  See id. at  12:4-12 (Khalsa).

-7-

In regards to the impact of the reprosecution on the administration of the Speedy Trial Act and on justice, Pallanes' counsel argued that the Court needs to look at the circumstances that occurred during the period of delay until the actual dismissal goes into effect.  See id. at 12:20-13:1 (Khalsa).  Specifically, Ms. Khalsa urged the Court to consider Pallanes' time at the half-way house and how two of her children have gone missing since her time there.  See id. at 19:1-10 (Khalsa).

At the hearing the United States responded to the Defendants by explaining why the delay took place.

> The prosecutor who was assigned to this case . . .  is [also] assigned to a  complex
> case that's in the district of Arizona . . . and he has to travel back  and forth from
> Arizona to New Mexico, and he was relying on his paralegal to calendar certain
> events for him and through no fault of hers . . . it was mis[ ]calendar[ed].

See id. 21:8-15 (Cairns).  The United States stated that the violation was not intentional and was not done to delay the case.  See id. at 22:4-7 (Cairns).  The United States argued that the number of cases that come through the District of New Mexico is very large and that the number of cases that involve a violation such as the one in this case is a very small fraction of the number of cases that the United States Attorney's Office processes.  See id. at 22:8-17 (Cairns).

The United States also explained that they were aware of the violation approximately three to four days before the expiration of the thirty-day period.  See id. at 15:8-13 (Cairns).  The Assistant United States Attorney explained, however, that, at the time the United States Attorney's Office became aware of the problem, nothing could be done to prevent the violation, because there was not a grand jury available to indict the Defendants.  See id. at 16:22-7:5 (Cairns).  Mr. Cairns explained that  there is essentially one grand jury every two weeks in Albuquerque and that, at the time his office discovered the violation, there was no grand jury available so as to prevent the violation.  See id.

The United States also investigated the possibility of the defendants being indicted by the grand jury in Las Cruces. See id. at 25:15-25 (Cairns). The grand jury in Las Cruces, however, was also not available within the relevant time period. See id. When questioned whether the United States Attorney's Office could call a special grand jury to hear the case, Mr. Cairns indicated that he did not know how -- from a practical standpoint -- a special grand jury could be summoned, constituted, and initiated in such a short period of time. See Tr. at 26:23-27:8, 27:16-28:5 (Cairns).

The United States conceded that it was aware that this violation had occurred on a prior occasion before the Court in a case titled United States v. Perez-Alcatan, 376 F.Supp.2d 1253 (D.N.M. 2005). See Tr. at 17:8-11 (Cairns).

The United States argued that, in assessing the seriousness of the offense, the circumstances of the particular crime should not be considered, as suggested by the Defendants. See id. at 18:11-18 (Cairns). Specifically, the United States said that United States v. Jones, 213 F.3d 1253 (10th Cir. 2000), seems to support the proposition that the Court should look to the offense as charged and not at the circumstances of the crime. See Tr. at 18:11-17 (Cairns). Additionally, the United States said that even if the Court considered the evidence in this case, the Affidavit of Special Agent Perry states that both Defendants gave statements admitting that they knew they were carrying the drugs. See id. at 18:18-19:1 (Cairns). Mr. Cairns also advised the Court that the seriousness of this offense is evident by the very lengthy sentence that the Court can imposed based on the United States Sentencing Guidelines. See id. at 20:19-21:2 (Cairns). The United States apologized for its error and asked the Court to dismiss the case without prejudice. See 24:7-12 (Cairns).

## LAW REGARDING SPEEDY TRIAL ACT

"'The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to

a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings.'" United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)). The Speedy Trial Act, 18 U.S.C. § 3161(b), reads:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Section 3162(a)(1) of the Act sets out the sanctions when the United States has not filed an indictment or information within the time limit that § 3161(b) requires:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

In United States v. Cano-Silva, 402 F.3d 1031 (10th Cir. 2005), the United States Court of Appeals for the Tenth Circuit stated:

> The fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations. Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation.

Id. at 1035.

> While dismissal of the indictment is mandatory, the district court retains discretion to determine whether the indictment is dismissed with or without prejudice. In determining whether to dismiss with or without prejudice, the court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

-10-

Id. at 1034 (quoting 18 U.S.C. § 3162(a)(2))(internal citations omitted). The seriousness of the offense must be weighed against the severity of the delay.  See United States v. Jones, 213 F.3d at 1257.  In addition, the Supreme Court of the United States has suggested that the trial court should also consider, when determining whether to dismiss an indictment with prejudice, the prejudice to the defendant that a Speedy Trial violation delay has caused. See United States v. Taylor, 487 U.S. 326, 333-34 (1988).

"It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." United States v. Taylor, 487 U.S. 326, 342 (1988). "Preindictment delay that rises to a constitutional violation requires dismissal of the indictment with prejudice to retrial." United States v. Johnson, 120 F.3d 1107, 1110 n.2 (10th Cir. 1997)(citing United States v. Marion, 404 U.S. 307, 324 (1971)(finding no speedy trial violation when defendant was not "subjected to formal restraint prior to indictment")). "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the government, dismissal with prejudice is the appropriate remedy." United States v. Saltzman, 984 F.2d at 1093. See United States v. Johnson, 120 F.3d at 1112 ("Ms. Johnson bears no responsibility for the circumstances leading to the Speedy Trial Act violation, and [] she properly asserted her rights under the Act."). In United States v. Johnson, one aspect of the Speedy Trial Act violations that troubled the court was the relatively uncomplicated nature of the offense. See id.

In United States v. Perez-Alcatan, 376 F.Supp.2d 1253 (D.N.M. 2005)(Browning, J.), the Court dismissed Perez-Alcatan's indictment without prejudice because the United States, through inadvertent error, failed to indict him within thirty days of the arrest, as the Speedy Trial Act requires.  See 376 F.Supp.2d at 1257.  Thirty days from Perez-Alcatan's arrest was May 26, 2005.

-11-

See id. at 1254.  A grand jury indicted Perez-Alcatan on June 14, 2005.  See id.

Perez-Alcatan argued that the Court should dismiss his case with prejudice.  See id. at 1256. He contended that his charged crime, re-entry into the United States after conviction for an aggravated felony, which carried a 16-level enhancement under the United States Sentencing Guidelines, was not a serious crime.  See 376 F.Supp.2d at 1257.  His underlying aggravated felony was voluntary manslaughter.  See id. at 1254.

The Court in United States v. Perez-Alcatan looked to the Sentencing Guidelines, stating that a 16-level enhancement is among the largest in the Sentencing Guidelines, which signals Congress' intent to consider the crime as a serious one.  See 376 F.Supp.2d at 1256.  Furthermore, the Court stated that the seriousness of the crime is indicated by the Guideline's lack of authorization for probation in such circumstances, and by the fact that Congress is hiring more border agents and Assistant United States Attorneys to slow the flow of immigration and punish those who are already felons.  See 376 F.Supp.2d at 1256.  The Court concluded that the seriousness of the offense favored dismissal without prejudice.  See id.

The Court in United States v. Perez-Alcatan also held that the facts and circumstances that led to the delay situation did not favor dismissal with prejudice.  See id. at 1256-57.  While most immigration cases in which a defendant waives a preliminary hearing and detention hearing also entail a waiver of presentment to the grand jury, Perez-Alcatan chose to waive the detention hearing and the preliminary hearing, but not presentment to the grand jury.  See id. at 1256.  As a result of the unique situation, the file cover was annotated "waiver" and was incorrectly filed causing untimely presentment.  See id. at 1257.

The Court in United States v. Perez-Alcatan held that, because the delay-producing conduct was an administrative oversight and was without bad faith, dismissing the case with prejudice would

-12-

do little to prevent such future mistakes.  See id. at 1257.  Furthermore, the Court stated that, because the "United States continues to present its cases for indictment in a timely manner; dismissal with prejudice would not improve the professional efforts already in place in adhering to the Speedy Trial Act."  376 F.Supp.2d at 1257.  The Court also stated that Perez-Alcatan had not alleged any actual prejudice in his ability to defend himself.  See id.  The Court, therefore, dismissed the case without prejudice.  See id.

## ANALYSIS

There is no dispute that the United States returned the Indictment in this case beyond the statutorily required thirty-day period.  The United States violated 18 U.S.C. § 3161(b) when it obtained the Indictment more than thirty days after the arrest, as the statute requires.  The Defendants ask the Court to dismiss the Indictment brought in this case.  The United States concedes the appropriate remedy is dismissal.

The Defendants ask the Court to dismiss the Indictment with prejudice.  See Motion to Dismiss ¶ 4 at, 1.  The United States contends the Court should dismiss the Indictment without prejudice.  See United States' Response at 5.  As the Speedy Trial Act and the controlling case law directs, the Court looks to three factors in deciding whether it should dismiss a case in this situation with or without prejudice.  See 18 U.S.C. § 3161(b); United States v. Cano-Silva, 402 F.3d at 1034-35.

### A.   SERIOUSNESS OF THE OFFENSE.

When compared to the seriousness of this crime, the severity of delay – thirteen days – is relatively slight.  See United States v. Jones, 213 F.3d at 1257 (indicating that the court must weigh the seriousness of the offense against the severity of the delay).  While any delay that results in the loss of liberty is material and unfortunate, the Court cannot yet determine whether there has been

a real loss of liberty; if there is a conviction, it is unlikely that there will be any loss of liberty other than what the Defendants would otherwise receive.  During the November 21, 2007 hearing, Garcia-Cornejo's attorney conceded that this is a Speedy Trial Act question as opposed to a loss-of-liberty question and that, had the sequence of events been different, there would likely be no markedly different change in Garcia-Cornejo's loss of liberty.  See Tr. at 7:6-12 (Dunleavy).  In response to the Court's statement that it is difficult to determine whether there is a loss of liberty interest, Garcia-Cornejo's counsel stated:

> Exactly Judge. And . . . certainly nobody has a crystal ball on that one.  And the Court -- the standard for the Court is -- the Court has a lot of discretion on this issue, Your Honor.  And I -- I think you're right, it's a speedy trial issue.  Mr. Cornejo certainly sees it as a liberty issue, but I do not thin[k] things would change that markedly had the sequence been different in this case.

Id.  In any case, the Court must engage in some weighing of the delay with the seriousness of the offense.

In considering the seriousness of the offense, the Court believes that the proper scope of such a consideration is limited to the seriousness of the offense itself as defined by the United States Sentencing Guidelines rather than the seriousness of the specific evidence regarding the charged crime, as the Defendants' counsel argues.  The counsel for both Garcia-Cornejo and Pallanes conceded that they had no case law to support their argument that the Court should consider such evidence in its determination of whether to dismiss the indictment with or without prejudice.  See Tr. at 9:25-10:2 (Khalsa); id. at 4:23-5:7 (Dunleavy & Court).  The Court does not believe its task is to look at the evidence and make some individualized determination how serious the particular alleged crime was, or make, as it sometimes must do in detention hearings, some determination of how strong the evidence against the defendant is.  The Court reaches a more principled decision by relying heavily on the political branches' expression of the seriousness of the crime charged rather

than on some more subjective or ad hoc determination based on the specific case's evidence.  The United States Sentencing Guidelines indicate that the alleged crime is very serious, suggesting an imprisonment range of 151 to 210 months for such a conviction.  <u>See</u> United States' Response at 4.

Furthermore, even if the Court were to employ the method that the Defendants propose, of looking to the specific evidence of the crime committed, the crime still appears to be serious.  Both Garcia-Cornejo and Pallanes gave post-<u>Miranda</u> statements indicating that they knew they were transporting drugs to Chicago.  <u>See</u> Perry Aff. at 3.  Garcia-Cornejo stated that he and Pallanes were to be paid $7,000.00 to deliver synthetic heroin to Chicago.  <u>See</u> <u>id.</u>  Pallanes stated that she was delivering what she believed to be cocaine and had previously met with people in Chicago to arrange the transportation of the drugs.  <u>See</u> <u>id.</u>  Even if they were not fully aware of the consequences of their actions or the specific drug they were transporting, as Garcia-Cornejo's counsel suggests, <u>see</u> Tr. at 4:13-21 (Dunleavy), if the Court looked solely to what they admitted knowing, the alleged crime is still very serious.  Furthermore, the thirteen-day delay is very slight in comparison to the seriousness of the crime.  A review of both the Sentencing Guidelines and the specific evidence in this case favors a dismissal without prejudice.

### B.     FACTS AND CIRCUMSTANCES THAT LED TO THIS SITUATION.

The United States is fully culpable for what happened.  Its actions, however, were not intentional.  The Court believes that, after discovering the future violation three to four days before the thirty-day deadline, the United States was realistically unable to do anything to avoid the violation.  Because no grand jury would be prepared to indict the Defendants before the thirty-day deadline, the United States could not have done anything to avoid the violation by the time it was discovered.  The delay-producing conduct was not a method to delay the case but rather an administrative oversight.  No bad faith was involved.

-15-

Given the volume of immigration and drug cases that the Court has seen processed in this District over the last four years, it knows that these situations are the exception and not a pattern of neglect.  The District of New Mexico has more criminal filings per district judge than any other district in the nation, so it has a unique vantage in seeing how large caseloads are handled.  While the Court has had to deal with Speedy Trial Act issues, the Court believes that this case is only the second instance in which there was a delay in securing the indictment.  The Court dealt with this situation in 2005 in United States v. Perez-Alcatan. See 376 F.Supp.2d 1253.  In United States v. Perez-Alactan, the case file cover of Perez-Alcatan's file was ambiguously annotated and thus placed in the wrong stack of cases for processing causing it to not being timely prepared for presentment.  See id. at 1257. The Court held that while the "United States was fully culpable for what happened . . . its actions were not intentionally delaying." Id.  The Court held that the delay-producing conduct was an administrative oversight, and that there was no bad faith involved.  See id.  The Court reasoned that the circumstances and the lack of bad faith counseled against dismissal with prejudice.  See id.  Similarly, in this case, the delay-producing conduct was an administrative oversight and there was no bad faith involved.  The circumstances of this case, therefore, counsel against dismissal with prejudice.

### C.   IMPACT OF REPROSECUTION ON THE ADMINISTRATION OF THE SPEEDY TRIAL ACT AND OF JUSTICE.

The Court appreciates that the delay effects not only the Defendants' rights, but also society's rights and interest in the speedy disposition of criminal cases.  Dismissing this case with prejudice, however, will do little to prevent administrative mistakes.  Dismissal with prejudice would not favorably impact the administration of justice, because the error was inadvertent.

The American legal system usually makes a sharp distinction in remedies for intentional

conduct and for negligence, precisely because all human mistakes cannot be avoided and punishing them the same as intentional conduct will not likely avoid measurably human error. The United States continues to present almost all of its cases for indictment in a timely manner.  The parties have not shown how dismissal of this case with prejudice will likely improve the professional efforts already in place in adhering to the Speedy Trial Act.[3]

There is no sound reason why these two Defendants -- of the thousands that come before the federal courts each year -- should enjoy the windfall of immunity from suit for their alleged drug-trafficking crime.  Dismissal with prejudice would thus not favorably impact the administration of justice.  The error was inadvertent.  Moreover, the delay has not provided the United States with a tactical advantage.  This factor counsels against dismissal with prejudice.

### D.	PREJUDICE TO THE DEFENDANT.

While the Defendants have been detained more than they should have been without an Indictment, and there has been a possible loss of liberty, it is probably the case that,  if the United States had acted properly, the defendants would have served the same time in custody.  See Tr. at 7:6-12 (Dunleavy)(stating  that "nobody . . . has a crystal ball on that one. . . . Mr. Cornejo certainly sees it as a liberty issue, but I do not thin[k] things would change that  markedly had the sequence been different in this case.") The Defendants have not alleged any other actual prejudice in their

---

[3]The Court acknowledges that Pallanes alleges that she has suffered injustice from this delay by remaining in the half-way house and having two of her children disappear since her stay there. See Tr. at 19:1-10 (Khalsa).  While the Court is sympathetic to Pallanes' situation, it does not have enough information about the circumstances of the children and their disappearance to be able to determine what weight, if any, those circumstances should have on the Court's determination in this case.  The Court was made aware of the disappearance of the children only by general statements by Pallanes' attorney at the November 21, 2007 hearing, and was not given any details about the custody of the children before their disappearance or the circumstances surrounding the alleged disappearance of the children.

ability to defend themselves.   This factor also counsels that the Court dismiss the case without prejudice.

In conclusion, the Court will dismiss the indictment without prejudice.  This situation does not rise to the egregious category that warrants dismissal with prejudice.  The harm has been relatively slight, and there is no indication that the United States acted intentionally in delaying the Indictment.

**IT IS ORDERED** that Defendant William Garcia-Cornejo's Motion to Dismiss Indictment and Defendant Christina Anna Pallanes' Notice of Joinder in Motion to Dismiss Indictment are granted in part and denied in part.  The Court held a hearing on the motion.  The Indictment is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   United States Attorney for the District
     of New Mexico
Norman Cairns
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Susan B. Dunleavy
   Assistant Federal Public Defender
Albuquerque, New Mexico

   *Attorney for Defendant William Garcia-Cornejo*

Kirtan K. Khalsa
Albuquerque, New Mexico

*Attorney for Defendant Christina Anna Pallanes*